**In re VMS SECURITIES LITIGATION.**

**No. 89 C 9448.**

United States District Court,
N.D. Illinois, E.D.

Feb. 20, 1992.

Steven Wasserman, Brandeis, Bernstein & Wasserman, New York City, for Associates in Internal Medicine, Sweet Ball Mantell MD/PA Profit Sharing—Sweet Account.

David N. Mahler, Mahler & Associates, Newport Beach, CA, representative for Elmer Ralph Hubbard and Lois Dearduff Hubbard.

Timothy A. Nelsen, Miriam G. Bahcall, John A. Bannon, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Prudential Securities Inc.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

By final order dated November 19, 1991, the court approved a settlement agreement in this consolidated securities fraud class action against numerous defendants, including Prudential Securities, Inc. Prudential Securities moves for enforcement of the November 19, 1991 final judgment ("final judgment") against individual class members Elmer and Lois Hubbard ("the Hubbards") and Associates in Internal Medicine, Sweet Ball & Mantrell—Sweet Account ("Sweet"). Prudential Securities further moves to partially vacate an arbitration award by the Pacific Stock Exchange in favor of the Hubbards on claims that Prudential Securities contends were released by the class action settlement. Prudential Securities also moves to enjoin Sweet from further prosecuting purportedly released claims against Prudential Securities in arbitration proceedings before the National Association of Securities Dealers, Inc. ("NASD").

## BACKGROUND

I. *VMS Securities Litigation*

On April 30, 1990, a first consolidated class action and derivative complaint was filed asserting claims arising out of the purchase of interests in eight mortgage investment funds sponsored by defendant VMS Realty Partnerships ("the funds").

In September 1991, the class plaintiffs filed a fourth consolidated and amended class action and derivative complaint ("the complaint"), alleging Prudential Securities represented that investments in the funds involved only a minimal risk when Prudential Securities allegedly knew that the investments involved a high degree of risk.

On September 24, 1991, this court preliminarily approved a proposed settlement of all class and derivative claims against all defendants, subject to notice to class members, a hearing, and final court approval. Distribution of notice of the proposed class settlement began on October 3, 1991. The notice informed class members that if the settlement were approved, the litigation would be dismissed with prejudice. The notice further instructed that all class members failing to exercise a specified right to exclude themselves from the class by November 9, 1991 would be deemed to have released the defendants, including Prudential Securities, from every asserted or potential claim that in any manner related to the purchase or sale of the VMS securities that were the subject of the class action. The notice specifically instructed class members that they would not be permitted to continue pursuing previously commenced individual actions against the defendants arising from VMS transactions unless they excluded themselves from the class.

On November 19, 1991, after conducting a fairness hearing, the court entered final judgment, approving the settlement as fair, reasonable, adequate and in the best interests of the class members. The final judgment included a release of all asserted or potential class or individual claims related to the purchase of VMS securities, specifically stating:

Plaintiffs ... shall release, remise, acquit and forever discharge each of the Defendants, their respective present and former parents, subsidiaries, Affiliates, Associates, officers, directors, trustees, employees and agents (including their attorneys, consultants, brokers, broker-dealers, account executives, investment advisers, and investment bankers) and the heirs, executors and administrators, successors and assigns of each, of and from (i) every asserted or potential individual, Class, or other claim, right or cause of action, under federal, state or common law, or any other law, known or unknown, that has been, might have been, or might be asserted in the Litigation or in any other court or forum whatsoever (x) in connection with, arising out of, or in any way relating to any facts, transactions, occurrences, representations, omissions or other subject matter occurring on or before August 21, 1990 ...; and (ii) every asserted or potential claim that in any manner whatsoever relates to the purchase or sale of any securities of any of the Funds by any Class Member during the Class Period or to the decision to continue holding any such securities purchased during the Class Period....

Final judgment ¶ 8. The final judgment also expressly enjoined all parties from asserting any released claim.

[E]ach Class Member and each of the Defendants are hereby severally and permanently barred and enjoined from asserting or continuing to assert any of the claims he, she or it released pursuant to the provisions of paragraph 8 of this Final Judgment of Dismissal in any court or other forum whatsoever, including such released claims as already may have been asserted in any pending action, arbitration or other proceeding.

*Id.* ¶ 9. Finally, the court expressly retained jurisdiction to enforce and implement the terms of the settlement.

Without affecting the finality of this judgment in any way, this court retains continuing jurisdiction: (a) over implementation of this settlement; ... and (f) over all parties to these actions for the purpose of taking such other actions as may be necessary to conclude and administer this settlement and to implement and enforce the Stipulation of Settlement.

*Id.* ¶ 13.

## II. *Hubbard Claims and Arbitration Proceedings*

In September 1988, the Hubbards purchased, through a Prudential Securities ac-

count executive, interests in VMS Mortgage Investment Fund ("M.I.F."), one of the eight funds that were the subject of the class action. On February 22, 1991, the Hubbards filed an arbitration claim with the Pacific Stock Exchange, asserting claims against Prudential Securities with respect to their M.I.F. investment. The Hubbard's arbitration claim also included a second investment purchased through Prudential Securities; the second investment was not a subject of the class action. The Hubbards alleged suitability claims, as well as more specific violations of federal securities laws.

On November 12, 1991, Prudential Securities informed the Hubbards and the arbitration panel that the Hubbards, as members of the VMS class who did not opt out prior to the November 9, 1991 deadline, were enjoined from arbitrating their M.I.F. claims. Prudential Securities informed the arbitrators that the class action settlement and accompanying injunction dissolved the panel's jurisdiction to arbitrate the Hubbards' M.I.F. claims. The arbitration panel rejected Prudential Securities' arguments regarding jurisdiction. The Hubbards continued to prosecute their M.I.F.-related claims. On December 11, 1991, the arbitration panel awarded the Hubbards $100,000 on their M.I.F. claims and $25,000 on all other claims. *See Hubbard v. Prudential Securities, Inc.,* No. ARL–01251 (Pac.Stock Exch. December 11, 1991).

### III. *Sweet Claims*

In May 1985, Sweet purchased, through Prudential Securities account executive Donald Peters, interests in VMS Mortgage Investors L.P. ("L.P."), another of the eight funds in the VMS class action. In November 1990, Sweet filed a NASD arbitration claim against Prudential Securities regarding his L.P. investment. The arbitration complaint alleged that Prudential Securities had advised Sweet that the L.P. investment was safe, secure, high-yielding and commensurate with other Sweet investments. Prudential Securities allegedly dissuaded Sweet later from selling or liquidating his interests. Sweet asserted that Prudential Securities failed to properly disclose

the true risks associated with the investment, failed to keep Sweet apprised of relevant developments in his investments and failed to take appropriate action to limit Sweet's losses.

On October 31, 1991, Sweet received the notice of the proposed class settlement in the VMS litigation by first class mail. A summary of the proposed settlement was published in *The Wall Street Journal, New York Times* and the *Chicago Tribune.* On November 5, 1991, Sweet's attorney received from Prudential Securities a separate copy of the class settlement notice. Also enclosed was a letter specifically warning counsel that Sweet must exclude himself from the class if he intended to continue prosecuting his individual arbitration claims. Sweet did not opt out of the class by the November 9, 1991 deadline.

### DISCUSSION

Prudential Securities moves to enforce the final judgment approving the VMS litigation settlement agreement and enjoining the parties from pursuing any actual or potential class or individual claims related in any way to the funds. Prudential Securities contends that in failing to exclude themselves from the class during the designated opt out period, Sweet and the Hubbards relinquished any right they might otherwise have to prosecute their respective arbitration claims regarding investments in the subject funds.

### I. *Motions to Enforce Judgment*

#### A. Sweet Claims

Prudential Securities contends that Sweet's arbitration claims are encompassed by the broad claim release provisions of the class action settlement as embodied in the final judgment. Sweet responds that the final judgment is ambiguous as to the claims being released. The final judgment releases all asserted or potential claims against Prudential Securities "employees and agents" (including ... attorneys, consultants, brokers, broker-dealers, account executives, investment advisers, and investment bankers). Final Judgment ¶ 9. How-

ever, the same clause specifically excludes "any non-defendant that was a selling agent of a Defendant." *Id.* Sweet contends that Donald Peters, the Prudential Securities broker through whom Sweet purchased his L.P. interests, arguably falls within the claim release exception. Sweet prudently does not pursue this position with much vigor. Indeed, Sweet does not dispute that Peters was a Prudential Securities account executive and thus expressly within the Prudential Securities employee group against whom all claims relating to the funds were released.

■ Sweet next contends that his arbitration claim was not released because it is based on oral representations by Prudential Securities and account executive Peters. Sweet argues that the complaint upon which the settlement and final judgment was based focused particularly on misrepresentations stated in a written prospectus. Sweet asserts that he could not have released his oral misrepresentation claims because they were not expressly at issue in the VMS class litigation.

Sweet's focus on the complaint is misdirected. The issue of whether the VMS class action proceeded in part on the same claim advanced in Sweet's arbitration complaint is tangential to the question of the scope of the release provisions included in the final judgment. All parties not opting out by the November 9, 1991 deadline released "every asserted or potential claim that in any manner whatsoever related to the purchase or sale of any securities" of the subject funds. Final judgment ¶ 8. Sweet, as a member of the class, expressly released not only claims arising from written representations, but any claims "arising out of, or in any way relating to *any* acts, facts, transactions, occurrences [or] representations" relating to the subject funds' securities. *Id.* Additionally, Sweet's suggestion that judgment upon a class settlement cannot bar particular claims not at issue in the class action is incorrect. *See, e.g., TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460–62 (2d Cir.1982); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195

(5th Cir.1981). Sweet, as a member of the class, therefore released the claims upon which he bases his arbitration action.

■ Sweet alternatively argues that he should not be bound by the terms of the final judgment because the notice of the proposed class settlement was not adequate or reasonable. Notice to all class members was mailed no later than October 8, 1991, thirty-one days prior to the scheduled opt out deadline. Additionally, notice was published in the *Wall Street Journal* and *New York Times* on October 11, 1991, twenty-eight days prior to the opt out deadline. The notice therefore provided class members ample time to decide whether to exercise their right to opt out. *Compare, Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (notice of proposed settlement issued nineteen days prior to fairness hearing was adequate).

■ Sweet finally argues that the court should exercise its equitable power to permit Sweet to opt out of the class at this late date. The court first notes that Sweet has not filed a formal motion requesting either an enlargement of time to opt out under Fed.R.Civ.P. 6(b)(2) or for relief from final judgment under Fed.R.Civ.P. 59(e) or 60(b). Second, the standard for granting an enlargement of time after the expiration of the specified opt out period is "excusable neglect." Fed.R.Civ.P. 6(b)(2); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 120 F.R.D. 51, 52 (N.D.Ill. 1988). Sweet has not established excusable neglect for his failure to exclude himself prior to the November 9, 1991 deadline.

Sweet contends that he did not receive the notice until October 30, 1991. Sweet thus concedes that he received notice of the proposed settlement at least ten days prior to the expiration of the deadline. Similarly, Sweet concedes that Prudential Securities provided Sweet's counsel with an additional notice of the proposed settlement on November 5, 1991, despite the fact that supplemental notice was not required. The supplemental notice to Sweet's counsel was contained in a letter from Prudential Secu-

rities expressly warning that his client's failure to timely file a request for exclusion would result in the release of Sweet's pending individual claims against Prudential Securities.

Sweet offers no explanation that might excuse his failure to exercise his right to exclude himself from the class or to request an extension of time to do so. Sweet contends that he did not fully understand the meaning of the notice and that he therefore referred the matter to his attorney. However, Sweet offers no explanation for his attorney's failure to take immediate action to preserve Sweet's arbitration claims. Although Sweet's late receipt of notice limited the time for his response, Sweet had ample time to bring this problem to the court's attention prior to or immediately after the expiration of the response deadline. Accordingly, Sweet has failed to establish excusable neglect that might warrant exclusion at this late date.

### B. Hubbard Claims

Prudential Securities contends that the Hubbards' M.I.F.-related arbitration claims are encompassed by the broad claim release provisions of the final judgment. The Hubbards flatly dispute Prudential Securities' argument. However, the Hubbards do not offer any analysis in support of their bare contention. Instead, the Hubbards argue that this court lacks federal subject matter jurisdiction to rule on Prudential Securities' motion to enforce final judgment. The Hubbards contend that the arbitration award at issue is based solely on state law suitability claims that alone do not provide a basis for the exercise of federal subject matter jurisdiction.[1] Both the Hubbards' unsubstantiated contention that they did not release their M.I.F. investment claims and the contention that this court lacks subject matter jurisdiction are explicitly foreclosed by the broad scope of the settlement agreement.

First, regarding jurisdiction, the settlement agreement as embodied in the final judgment permanently enjoins the Hubbards, as members of the VMS plaintiffs' class, from asserting any of the specified released claims, "including such released claims as already may have been asserted in any pending action, *arbitration*, or other proceeding." Final judgment ¶ 9 (emphasis added). The court expressly retained jurisdiction to enforce and implement the terms of the settlement agreement, including the injunction. *Id.* ¶ 13. Even in the absence of an express reservation of jurisdiction, this court automatically retains jurisdiction to enforce its own injunction. *See, e.g., United States v. Fisher*, 864 F.2d 434, 436 (7th Cir.1988); *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir.1985). The settlement agreement and accompanying injunction therefore provide a continuing basis for this court's exercise of jurisdiction over the parties with respect to any attempt by the Hubbards to assert a released claim in another forum.

There can be no question that the Hubbards' arbitration claims arising from their investment in M.I.F., one of the eight funds in the VMS class action, are plainly encompassed by the settlement release clause embodied in the final judgment. Under the settlement agreement, the Hubbards, as members of the class, released and relinquished not only all federal, class claims, but "every asserted or potential individual, Class, or other claim, right or cause of action, under federal, state or common law, or any other law, known or unknown, that has been, might have been, or might be asserted in the Litigation or in any other court or forum whatsoever [ ] in connection with, arising out of, or in any way relating to any facts, transactions, occurrences, representations, omissions or other subject matter" involving the funds. Final judgment ¶ 8. Accordingly, the Hubbards' contentions regarding the lack of

---

**1.** The court takes no position regarding the Hubbards' characterization of their arbitration claim as based solely on state common law grounds. However, as Prudential Securities duly notes, federal courts have recognized suita-

bility claims asserted by way of an action pleaded under federal securities law. *See, e.g., Clark v. John Lamula Investors, Inc.,* 583 F.2d 594, 599–600 (2d Cir.1978).

subject matter jurisdiction and the release of the Hubbards' M.I.F. investment claims are meritless.

## II. *Motion to Vacate Hubbard Arbitration Award*

■ The Hubbards' prosecution of their M.I.F. investment claims against Prudential Securities before the Pacific Stock Exchange arbitration panel plainly contravened the terms of the final judgment in the VMS litigation. The court may enforce the final judgment simply by enjoining the Hubbards from confirming and executing their M.I.F. arbitration award. *See, e.g., Sanders v. Robinson–Humphrey American Express, Inc.,* No. 1:85–cv–172–RLV (N.D.Ga. Order of August 8, 1991) (enforcing injunction against assertion of released claims in securities fraud class action by prohibiting attempts to execute arbitration award on released claim). However, Prudential Securities moves the court to take the more definitive step of vacating the portion of the Hubbards' arbitration award based on the released M.I.F. investment claim. Prudential Securities specifically contends vacation is warranted under 9 U.S.C. § 10(d), which permits vacation of an award where the arbitrators "exceeded their powers." According to Prudential Securities, the Pacific Stock Exchange arbitrators exceeded their powers because the Hubbards, as members of the VMS class, had released their M.I.F. investment claims, thus divesting the arbitrators of jurisdiction to arbitrate.

The Hubbards respond by asserting that proper venue does not lie in the Northern District of Illinois for partially vacating the Pacific Stock Exchange arbitration award pursuant to § 10. Section 10 contains a venue provision stating that under certain limited circumstances, "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. The Hubbards note that numerous circuit courts have held that the venue provisions of § 10 are mandatory and that an arbitration award therefore can be vacated only in the district in which the award was made.

*See, e.g., Central Valley Typographical Union, No. 46 v. McClatchy Newspapers,* 762 F.2d 741, 744 (9th Cir.1985); *City of Naples v. Prepakt Concrete Co.,* 490 F.2d 182, 183 (5th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974). The Hubbards' arbitration award was not made within the Northern District of Illinois. If the venue provision is viewed as mandatory, then venue does not properly lie in this district to partially vacate the Hubbards' arbitration award.

Prudential Securities cites decisions that give a permissive construction to the venue provision contained in § 9 of the Federal Arbitration Act, 9 U.S.C. § 9, governing confirmation of an arbitration award. *See, e.g., Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2d Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986). Section 9 provides that application to confirm an arbitration award "may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The Seventh Circuit in *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1272 & n. 16 (7th Cir.1976), has construed § 9 as permitting actions only in the court agreed upon by the parties or, in the absence of an agreement, the federal court for the district within which the award was made. The *Commonwealth Edison* construction of § 9 is consistent with the prevailing weight of authority construing the § 9 venue provision as mandatory.

Prudential Security does not address *Commonwealth Edison,* but instead cites *NII Metals Services, Inc. v. ICM Steel Corp.,* 514 F.Supp. 164 (N.D.Ill.1981) to support its argument that the venue provision of § 9 of the Federal Arbitration Act is permissive rather than mandatory. The plaintiffs in *NII Metals* filed a breach of contract action in the Northern District of Illinois. Because the contract contained an arbitration clause, the court stayed the action pending arbitration of the dispute in New York. The party prevailing in the arbitration moved for confirmation of the award in the Northern District of Illinois. The losing party in arbitration opposed the

motion, contending that only the district court for the Southern District of New York had jurisdiction to confirm the award. *NII Metals* held that a district court that specifically orders arbitration outside its geographical jurisdiction has subject matter jurisdiction to later confirm the award.

Prudential Securities contends that the logic of *NII Metals* should be extended to the present action. *NII Metals* did not address *Commonwealth Edison*. The absence of any discussion of the Seventh Circuit's mandatory construction of the § 9 venue provision persuades this court not to extend *NII Metals* beyond its facts. Additionally, *NII Metals* involved an issue arising solely under § 9; the language of § 9 differs from § 10 in a critical respect. Section 9 states that application to confirm "may be made to" the district court in the district in which the award was made. The permissive term "may" arguably modifies the identification of the appropriate court. The permissive term "may" as employed in § 10 is introduced only after the specific identification of the appropriate court: "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. Thus, in § 10, "may" is employed as a modifier to the actions that a specific district court may take, rather than as a modifier to the identification of the appropriate court.

Prudential Securities has not offered any evidence of legislative intent that might persuade this court to ignore the express mandatory venue provision stated in § 10. To the contrary,

> Congress' choice of the U.S. court in the district where the award is made as the appropriate forum is consistent with the character of arbitration as a dispute resolution device. Arbitration is "an opportunity generally to secure prompt, economical and adequate solution of controversies." *See Wilko v. Swan,* 346 U.S. 427, 438 [74 S.Ct. 182, 188, 98 L.Ed. 168] (1953). The district wherein the award was made is presumably a reasonable forum for effecting such a prompt, economical, and adequate solution.

*Enserch International Exploration, Inc. v. Attock Oil. Co.,* 656 F.Supp. 1162, 1165 & n. 8 (N.D.Tex.1987). The difference in the text of the venue provisions of § 9 and § 10 might be viewed as merely another anomaly of the Federal Arbitration Act. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (noting anomalous jurisdictional results of Federal Arbitration Act). However, the different placement of the permissive term "may" in the respective statutory provisions also may explain why the § 10 venue provision has been construed as permissive in only a single district court decision. *See Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311 (S.D.N.Y.1988). Prudential Securities has not offered a sufficient basis to overcome the statutory language of the § 10 venue provision and the manifest weight of authority giving that provision mandatory application. Accordingly, Prudential Securities' motion to partially vacate the Hubbards' arbitration award is denied.

## CONCLUSION

Prudential Securities' motions to enforce judgment against Elmer and Lois Hubbard, and Associates in Internal Medicine, Sweet Ball & Mantrell—Sweet Account are granted. Associates in Internal Medicine, Sweet Ball & Mantrell—Sweet Account is specifically enjoined from further asserting or prosecuting its arbitration claims against Prudential Securities relating to Sweet's VMS Mortgage Investors L.P. investment. Elmer and Lois Hubbard are specifically enjoined from attempting to enforce the portion of their arbitration award against Prudential Securities relating to the Hubbards' VMS Mortgage Investment Fund investment. Prudential Securities' motion to vacate the VMS Mortgage Investment Fund portion of the Hubbards' arbitration award is denied.