**In re VMS Securities Litigation.**

No. 89 C 9448.

United States District Court,
N.D. Illinois,
Eastern Division.

June 6, 1994.

Marvin A. Miller, Patrick E. Cafferty, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL, David J. Bershad, Robert A. Wallner, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Robert W. Mills, Law Offices of Robert Mills, San Rafael, CA, for plaintiffs.

Frank A. Karaba, Charles W. Siragusa, Thomas F. Karaba, Gregory M. White, Crowley, Barrett & Karaba, Chicago, IL, for defendants Robert D. Van Kampen, Brewster Realty, Inc.

Byron L. Gregory, Steven H. Hoeft, William P. Schuman, McDermott, Will & Emery, Chicago, IL, for defendants Melvin Howard, XCC Inv. Corp. and Xerox Corp.

Norman J. Barry, Alan S. Madans, Rothschild, Barry & Myers, Chicago, IL, for defendant Joseph J. Blake & Associates.

Timothy A. Nelsen, Miriam G. Bahcall, Donna L. McDevitt, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendants Prudential–Bach Properties, Inc. and Prudential–Bache Securities Inc.

Sarah R. Wolff, Lowell E. Sachnoff, Joel M. Neuman, Sachnoff & Weaver, Ltd., Chicago, IL, for defendants Scott Lager, Peter R. Morris, Joel A. Stone.

David S. Fleming, Schaefer, Rosenwein & Fleming, Chicago, IL, for defendant Marshall and Stevens, Inc.

Richard Lee Fenton, John I. Grossbart, Jeffrey P. Lennard, Duane C. Quaini, Christopher Q. King, Elena Z. Kezelis, Margo L. Weinstein, Steven M. Appelbaum, Elpidio R. Villareal, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants VMS Financial Services, VMS Mortg. Co., VMS Mortg. Co. II, VMS Realty Investors, VMS Financial Guarantee Ltd. Partnership, VMS Securities, Inc.

Jane Wasman, Matthew Gluck, Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants Peter R. Morris, Joel A. Stone.

Richard A. Devine, Dean A. Dickie, David L. Doyle, Allan T. Slagel, William K. Blanchard, Jr., Pope Cahill & Devine, Ltd., Chicago, IL, for defendant VMS Mortg. Inv. Fund.

Kenneth H. Hanson, Law Office of Kenneth H. Hanson, Chicago, IL, for Edward Prostic.

Alfred H. Hoddinnot, Jr., Xerox Corp., Stamford, CT.

Joel Sprayegen, Barry B. Gross, Shefsky & Forelich, Ltd., Chicago, IL.

Martha A. Mills, Smith, Williams & Lodge, Chtd., Chicago, IL, for Marshall & Stevens Inc.

Walter L. Baumgardner, Musilli, Baumgardner, Wagner & Parnell, St. Clair Shores, MI, for MI Class Members.

Kimberly Offenbacher, Lovretovich & Karen, Woodland Hills, CA.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In a final judgment order dated November 19, 1991 ("the final judgment"), this court approved a settlement agreement in this con-

solidated securities fraud class action against numerous defendants including Prudential Securities Incorporated ("Prudential"). Prudential moves to enforce the final judgment against class member Monsignor Maximos Mardelli ("Mardelli") and class members Marilyn J. Baird ("Baird"), Freida A. Huyck ("Huyck"), Wilma S. Anderson ("Anderson") and Anne DeSisto ("DeSisto") (collectively "the Michigan class members").

## BACKGROUND

The procedural history and facts of this case have been amply documented by this court and the Seventh Circuit. *See, e.g., In re VMS Securities Litigation,* 21 F.3d 139 (7th Cir.1994); *In re VMS Securities Litigation,* 1994 WL 8237, 1994 U.S.Dist. LEXIS 90 (N.D.Ill. Jan. 8, 1994); *In re VMS Securities Litigation,* 145 F.R.D. 458 (N.D.Ill.1992). Only relevant information will be repeated here.

This court consolidated a number of securities fraud cases filed against Prudential for the sale of various VMS funds into one class action. A settlement was reached, and this court approved notice procedures for informing the class members of the settlement and their right to opt out. The notices were sent out beginning on October 3, 1991. Notices were sent by first-class mail to all persons and entities who were purchasers of record of any of the VMS funds, and a summary notice was published in *The Wall Street Journal, The New York Times,* and *The Chicago Tribune. See* Prudential's Mot. to Enforce against the Michigan Class Members, Exh. 2. The notice informed class members that if the settlement were approved, the litigation would be dismissed with prejudice. The notice further instructed that all class members failing to exclude themselves from the class by a writing postmarked no later than November 9, 1991 would be deemed to have released the defendants from every asserted or potential claim that in any manner related to the purchase or sale of the VMS securities at issue. *See id.,* Exh. 3.

On November 19, 1991, after conducting a fairness hearing, the court entered a final judgment approving the settlement as fair, reasonable, adequate and in the best interests of the class members. Paragraph 6 of the final judgment excludes persons and entities who validly requested exclusion from the class; *i.e.,* those who opted out by submitting a writing postmarked no later than November 9, 1991. A small number of class members subsequently submitted untimely requests for exclusion. On August 11, 1992, this court decided who was bound by the final judgment, finding, *inter alia,* that the group of class members who claimed they misunderstood the notice did not possess a sufficient excuse for failing to validly opt out. The court noted that it had previously found that the class notice fairly apprised class members of the nature of the actions and the proposed settlement.

Mardelli invested $125,000 in VMS in the summer of 1988, when he was 79 years old.[1] Mardelli's Opposition at 1. Mardelli, a semi-retired priest and self-proclaimed unsophisticated investor, explains that he was interested in a safe, conservative investment to protect his retirement money. *Id.* Mardelli sought financial advice from Jeffrey Daggett ("Daggett"), the assistant manager of Prudential's Los Angeles office. *Id.* at 1–2. Mardelli claims he invested in VMS based on Daggett's representations that VMS was a safe, conservative, risk-free investment that was expected to produce high yields. *Id.* at 2. When Mardelli realized VMS had lost a substantial amount of its value,[2] he expressed concern to Daggett, who reassured him that he would recover his losses in a class action suit. *Id.* Mardelli claims Daggett never informed him of his right to opt out of the class action. *Id.* Mardelli also claims he never received notice of any type informing him of his right to opt out and did not know

---

1. Mardelli's opposition to Prudential's motion to enforce the final judgment states that Mardelli was 79 in the summer of 1988. Mardelli's Opposition at 1. However, Mardelli states that his current age is 81 in his complaint filed in the California Superior Court for the County of Los Angeles on February 15, 1994. Prudential's Mot.

to Enforce against Mardelli, Exh. 4 ¶ 3. Although Mardelli's age is not clear, his age is irrelevant for purposes of this motion.

2. Mardelli does not state when he realized VMS had lost a substantial amount of its value.

he possessed an opt-out right during the relevant time period. *Id.*

On February 15, 1994, Mardelli sued Prudential, Daggett and John Eisle, the manager of Prudential's Los Angeles office, in California Superior Court for the County of Los Angeles ("the California court action"). Prudential's Mot. to Enforce against Mardelli, Exh. 4. Mardelli's six-count complaint alleges that Prudential, Daggett and Eisle falsely represented that VMS Funds met Mardelli's investment needs and then schemed to minimize their losses by convincing Mardelli his only recourse was to join the class action lawsuit. *Id.* Prudential moves to enforce the November 19, 1991 final judgment by enjoining Mardelli from pursuing the VMS claims asserted in his California court action.[3]

The Michigan class members also did not opt out of the class. In fact, Prudential claims that three of the four Michigan class members have received checks for their share of the settlement. Prudential's Mot. to Enforce against the Michigan Class Members at 4, citing Exh. 5. The Michigan class members have sued Prudential in the Circuit Court of Genesee County, Michigan, *see Baird, et al. v. Prudential Securities Inc.*, No. 94–28145–CZ ("the Michigan court action"). The gravamen of the Michigan class members' suit is that they failed to opt out of the class due to their reliance on Prudential stockbrokers, who gave them unauthorized legal advice and engaged in unfair practices. Prudential moves to enforce the November 19, 1991 final judgment by enjoining the Michigan class members from pursuing their Michigan court action. Prudential also seeks a declaration that the Michigan class members could not have reasonably relied on the alleged advice of Prudential's brokers concerning the settlement.

### DISCUSSION

**1. Motion To Enforce Final Judgment Against Mardelli**

 Mardelli's assertion that he is not bound by the final judgment because he did not receive actual notice of the settlement fails. As this court stated when considering a similar situation earlier in this litigation,

> [T]he "dictates of due process do not require that every class member actually receives [ ] notice." *In re VMS Partnership Securities Litigation*, No. 90 2412 (N.D.Ill. May 19, 1991) (Zagel, J.). *See Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 363 (D.Del.1981) (individuals in class actions who do not actually receive notice still bound by final judgment order). Due process and Rule 23 merely require good faith Compliance [sic] with the presumptively valid notice procedures ordered by the court. *See Langford v. Devitt*, 127 F.R.D. 41, 44 (S.D.N.Y.1989).

Memorandum Opinion and Order, 89 C 9448, 1992 WL 203832, at *3, 1992 U.S.Dist. LEXIS 12141, at *7 (N.D.Ill. Aug. 11, 1992).

Mardelli is bound by the final judgment even if he did not receive actual notice of his right to opt out so long as Prudential provided the best practicable notice. Prudential provides evidence that it complied with the notice procedures specifically approved by this court on September 24, 1991. Prudential establishes that it mailed a timely notice to Mardelli's correct address at the time. Prudential's Mardelli Reply at 2 and Exhs. 11 & 12 (explaining the process for mailing notices). It may be that the notice was lost in the mail; it may be that Mardelli inadvertently threw it away or otherwise failed to give the matter sufficient attention. Whether Mardelli actually received the notice is irrelevant since Prudential complied with the notice procedures authorized by this court.

Since Mardelli is bound by the final judgment, he may not maintain VMS claims in his California court action. This court's November 19, 1991 final judgment specifies that class members released certain claims:

> Plaintiffs individually, and each member of the Class ... shall release, remise, acquit and forever discharge each of the Defendants ... of and from (i) every asserted or potential individual, Class, or

---

**3.** Prudential does not articulate, nor is it apparent from the face of the complaint, which, if any, of Mardelli's claims are not VMS claims.

other claim, right or cause of action, under federal, state or common law, or any other law, known or unknown, that has been, might have been, or might be asserted in the Litigation or in any other court or forum whatsoever (x) in connection with, arising out of, or in any way relating to any acts, facts, transactions, occurrences, representations, omissions or other subject matter occurring on or before August 21, 1990 set forth, alleged, embraced or otherwise referred to in the Litigation . . . ; and (ii) every asserted or potential claim that in any manner whatsoever relates to the purchase or sale of any securities of any of the Funds by any Class Member during the Class Period or to the decision to continue holding any such securities purchased during the Class Period to and including the date of signing of the Stipulation. . . .

Final Judgment ¶ 8(a), attached to Prudential's Mot. to Enforce against the Michigan Class Members, Exh. 4. It is unclear whether Mardelli's California court action involves claims that arose after the deadlines specified by the final judgment. However, it is clear that Mardelli may not bring actions against Prudential for securities fraud for the time period covered by the settlement.

Since the entry of the final judgment, this court has enforced the final judgment by enjoining other class members from pursuing their substantive claims against Prudential; the Seventh Circuit has affirmed this court's analysis. *See In re VMS Securities Litigation,* 89 C 9448, 1994 U.S.Dist. LEXIS 90 (N.D.Ill. Jan. 8, 1994) (enjoining a class member from pursuing arbitration against Prudential); *In re VMS Securities Litigation,* 145 F.R.D. 458 (N.D.Ill.1992), *aff'd in relevant part,* 21 F.3d 139 (7th Cir.1994) (enjoining class members from pursuing arbitration against Prudential). Mardelli's attempt to circumvent the final judgment by bringing claims against Prudential regarding the substance of the final judgment must similarly be prevented. Mardelli's VMS claims are enjoined by paragraph 9 of the final judgment, which states in pertinent part:

> Each Class Member and each of the Defendants are hereby severally and per-

manently barred and enjoined from asserting or continuing to assert any of the claims he, she or it released pursuant to the provisions of paragraph 8 of this Final Judgment of Dismissal in any court or other forum whatsoever. . . .

Final Judgment ¶ 9, attached to Prudential's Mot. to Enforce against the Michigan Class Members, Exh. 4.

## 2. Motion To Enforce The Final Judgment Against The Michigan Class Members

■ Prudential's motion to enforce the final judgment against the Michigan class members raises a different issue: does the final judgment enjoin class members from suing Prudential or its agents for causing the class members to fail to opt out of the class? The Michigan class members' Michigan court action avers that Prudential or its agents are liable for damages because the Michigan class members, relying on Prudential agents' assurances, failed to opt out of the class.

Paragraph 8 of the final judgment precludes the Michigan class members from bringing actions against Prudential for securities fraud for the relevant time period covered by the settlement. However, the release provision of the final judgment does not preclude the Michigan class members' Michigan court action. The release provision of the final judgment does not release Prudential from all class members' potential claims; Prudential is only released from claims regarding the securities fraud that is the subject of the settlement. The Michigan court action involves Michigan class members' reliance on alleged assurances by Prudential's agents that they would be adequately compensated by the class action or that they should not opt out. The subject matter of the Michigan court action is outside the scope of litigation precluded by the release provision of the final judgment. Thus, paragraph 9 of the final judgment, which enjoins all parties from asserting any released claim, is not implicated. *See Id.* ¶ 9.

Prudential's reliance on Judge Zagel's recent decision is misplaced. *See* Prudential's Citation of Additional Authority. On May 20, 1994, in another Prudential securities fraud case, Judge Zagel enforced a final or-

der against a settling class member. Order, *In re VMS Limited Partnership Securities Litigation*, 90 C 2412, May 20, 1994. The class member in Judge Zagel's case argued that his reliance on Prudential agents' advice not to opt out of the class constituted excusable neglect entitling him to relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1). Judge Zagel denied the Rule 60(b)(1) motion, holding that the motion was untimely and without merit. Judge Zagel commented that "[r]elying on one's adversaries rather than one's attorney for advice is an error that is to be laid at the feet of the one who made it"; such reliance is not reasonable, particularly when the notice instructed class members to consult with their own counsel or class counsel if they had questions. *Id.*

This court agrees with Judge Zagel's conclusion. In fact, this court reached the same conclusion when faced with Rule 60(b)(1) motions from class members seeking exclusion from class membership. *See, e.g., In re VMS Securities Litigation*, 89 C 9448, 1992 WL 368029, 1992 U.S.Dist. LEXIS 18100 (N.D.Ill. Nov. 30, 1992) (rejecting class members Horst and Ceidra Urich–Sasses' motion for relief from judgment and for leave to request exclusion from the class based on their reliance on a Prudential agent due to their poor ability to read or understand English when further discovery revealed substantial English proficiency and financial sophistication). This court has also made comments similar to Judge Zagel's. About the Urich–Sasses, this court stated: "Once they knew that there was a legal proceeding pending, it was no longer reasonable to continue taking legal or investment advice from Prudential or any of its agents." *Id.* 1992 WL 368029, *2, 1992 U.S.Dist. LEXIS 18100, at *5.

However, neither Judge Zagel's recent decision nor this court's previous decisions address the precise issue presented here. The Michigan class members do not bring their Michigan court action in hopes of retroactively opting out of the class and thereafter being free to pursue their securities fraud claims against Prudential. Rather than seeking to avoid class membership, the Michigan class members seek to recover damages for the post-fraud torts of Prudential's agents. The court disagrees with Judge Zagel's *dicta* that a tort action arising out of Prudential's misrepresentations about the class action is substantially the same as the class member's Rule 60(b)(1) motion and would also be barred. Order, *In re VMS Limited Partnership Securities Litigation*, 90 C 2412, May 20, 1994 (noting that a class member's turning to his adversary for advice "is no good as a basis for a 60(b) motion and its looks no better recast as an independent action designed to obtain the same result, the right to opt out after the time for doing so is past"). This court declines to comment on the likely success of the state actions.[4] The point is that the Michigan court action is not precluded by the final judgment.

### 3. Service Of Motion To Michigan Class Members

In their response to Prudential's motion to enforce the final judgment, the Michigan class members contend that Walter L. Baumgardner ("Baumgardner"), the attorney who received the motion, did not have authority to accept service of process on behalf of the Michigan class members. The Michigan class members appear to confuse service of process with service of a motion. *See* Fed.R.Civ.P. 4 ("Summons"); Fed.R.Civ.P. 5 ("Service and Filing of Pleadings and Other Papers").

The Michigan class members are already parties to this action and are represented by

---

**4.** Prudential submits evidence that a general release settling all Baird's claims—including her contention that her broker acted improperly—precludes Baird's state court action. Prudential's Mot. to Enforce against the Michigan Class Members, Exh. 10. Prudential also submits evidence that Huyck's claims, including one that her broker acted improperly, were denied when she failed to appear at an arbitration hearing. *Id.*, Exh. 11. Finally, Prudential submits evidence that Anderson's claims, including her contention that her broker acted improperly, were

dismissed by arbitrators due to Anderson's failure to request exclusion from class membership. *Id.*, Exh. 12.

That Prudential may be able to raise *res judicata* arguments against some or all of the Michigan class member's claims in the Michigan state court action does not mean the Michigan state action is barred by the final judgment, however. This court declines to rule on the possible *res judicata* effect of Baird's release, the denial of Huyck's claims, or the dismissal of Anderson's claims.

Baumgardner. Fed.R.Civ.P. 5 states with regard to service of every pleading subsequent to the complaint that "[w]henever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court." Fed.R.Civ.P. 5(b). Rule 5(b) also states that service my mail is proper.

■ The Michigan class members also contend that the service did not comport with the local court rules because the Michigan class members were not given adequate time to respond. Rule 12(E) of the Local Rules for the Northern District of Illinois states that when service is by mail, "the notice and documents must be mailed at least five business days before the date of presentment." Local General Rules at 133. Prudential noticed its motion on this court's May 5, 1994 motion call. Although Prudential asserts that service was made on April 26, 1994, *see* Prudential's Michigan Class Members Reply at 1–2, the certificate of service attached to Prudential's notice of motion states that a copy of the notice and the motion were mailed on April 28, 1994. Thus, it appears that Prudential did not mail its notice and motion at least five business days before the date of presentment; the May 5, 1994 date of presentment is the fifth business day after April 28, 1994.

However, the issue is moot because the Michigan class members were not prejudiced in any way. This court took Prudential's motion to enforce the final judgment against the Michigan class members under advisement on May 5, 1994 and gave the Michigan class members until May 16, 1994 to file a response. Order, 89 C 9448 (N.D.Ill. May 5, 1994). The May 5, 1994 order states that counsel were notified by telephone as well as by mail. The Michigan class members thus had ample time to respond to Prudential's motion.

■ Finally, the Michigan class members request costs, attorney fees and sanctions for their having to answer this "frivolous" motion. Michigan Class Members' Objection at 2. This request is denied. Fed. R.Civ.P. 11 was significantly revised, effective December 1, 1993. Under revised Rule

11, requests for sanctions must be made by a separate motion rather than as an additional prayer for relief. *See* Fed.R.Civ.P. 11(c)(1)(A). Specifically, the party seeking sanctions must serve the motion in accordance with Rule 5, but must not file or present the motion to the court for 21 days. The party opposing sanctions may, in that 21–day period, withdraw or correct the misrepresentation. Only if the opposing party does not take advantage of the 21–day "safe harbor" period to correct or withdraw the challenged representation may the party seeking sanctions file the sanctions motion in court. Because the Michigan class members did not comply with revised Rule 11, their request for sanctions is improper.

### CONCLUSION

Defendant Prudential Securities Incorporated's motion to enforce this court's final judgment in the VMS securities litigation against Monsignor Maximos Mardelli is granted. Defendant Prudential Securities Incorporated's motion to enforce this court's final judgment in the VMS securities litigation against Marilyn J. Baird, Freida A. Huyck, Wilma S. Anderson and Anne DeSisto is denied.