ERNEST LOBERG *et al.*, Indiv. and on Behalf of the Class, Plaintiffs-Appellants, v. HALLWOOD REALTY PARTNERS, L.P., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—00—0665

Opinion filed June 29, 2001.

Stephen B. Diamond, Lawrence W. Schad, James Shedden, and Steven J. Tomiello, all of Beeler, Schad & Diamond, P.C., David A. Genelly, of Vanasco, Wayne & Genelly, Ltd., and Kevin M. Forde and Mary Anne Mason, both of Kevin M. Forde, Ltd., all of Chicago, for appellants.

Nancy Scheurwater Hunter and Lisa P. Conlon, both of Latham & Watkins, of Chicago, and Miranda S. Schiller and Haron W. Murage, both of Weil, Gothshal & Manages, L.L.P., of New York, New York, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

In 1988, plaintiffs-appellants, Ernest Loberg, Harriet Loberg, and Sharon Menely, individually and on behalf of the class certified in September 1995, filed suit against Equitec Financial Group (Equitec Financial) and Equitec Fund A (Equitec A) seeking to rescind their purchases of Equitec A limited partnership interests on behalf of 41 Illinois residents who purchased the limited partnership interests in 1985 and 1986 from two unlicensed brokers. In 1989 Hallwood Realty Corporation (Hallwood) purchased the general partnership interests of 11 Equitec real estate limited partnerships.

In June 1990 Hallwood Realty Corporation issued a proxy statement that solicited the consent of the limited partners of 11 Equitec real estate limited partnerships sponsored by Equitec Financial to exchange or "roll-up" their limited partnership interests in their respective real estate limited partnerships for newly issued units of limited partnership interests in Hallwood Realty Partners, L.P. (HRP). This solicitation led to the litigation known as the Equitec Roll-up Litigation (Roll-up litigation), filed in California, in which the plaintiffs alleged that HRP, Equitec, and other defendants violated federal and state laws in conducting the 1990 proxy solicitation. In July 1994 plaintiffs amended their complaint in the Illinois litigation to add Hallwood Income Real Estate Investors A (Hallwood A) and HRP as defendants/successors-in-interest. The Roll-up litigation was settled in 1994.

On February 1, 2000, the trial court in the Illinois litigation granted summary judgment in favor of Hallwood A and HRP based upon the judgment and release by plaintiffs in the California Roll-up litigation.

The central issue in this case is whether the plaintiffs' claims in their Illinois class action litigation were released by the California judgment and release in the Roll-up litigation. We answer in the affirmative.

## BACKGROUND

In 1988, plaintiffs filed suit against Equitec Financial and Equitec A seeking to rescind their purchases of Equitec A limited partnership interests purchased from unlicenced brokers Kenneth Boula and Dean Gordon. The general partner of Equitec A was Equitec Financial. Plaintiffs' suit against Equitec Financial and Equitec A was one of several class action suits filed due to purchases of securities from the

same unregistered brokers. These suits were later consolidated under *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 629 N.E.2d 520 (1993).

In June 1990 Hallwood Realty Corporation issued a proxy statement that solicited the consent of the limited partners of 11 Equitec real estate limited partnerships sponsored by Equitec Financial to exchange or "roll-up" their limited partnership interests in their respective real estate limited partnerships for newly issued units of limited partnership interests in HRP. This solicitation led to the Equitec Roll-up litigation. The plaintiffs in the Roll-up litigation alleged that HRP, Equitec and other defendants violated federal and state law in conducting the 1990 proxy solicitation.

In August 1991 a class was certified and a court-ordered notice of pendency of class action (Notice) was sent to class members in the Roll-up litigation. That Notice was addressed to: "ALL PERSONS WHO HELD INTERESTS AS OF APRIL 30, 1990, IN ANY OF THE FOLLOWING EQUITEC-SPONSORED REAL ESTATE LIMITED PARTNERSHIPS AND EXCHANGED THOSE INTERESTS FOR LIMITED PARTNERSHIP INTERESTS IN HALLWOOD REALTY PARTNERS, L.P., AS A RESULT OF THE CLOSING OF THE SUBJECT EXCHANGE TRANSACTION ON NOVEMBER 1, 1990." Those persons constituted the class for the pending action. The judgment, whether favorable or not, would apply to the class members' claims and would be binding upon them and the defendants. The Notice further stated, "[i]f you wish to be included in the Plaintiff Class, you do not need to take any action." However, in order to be excluded from the class, a class member was required to send a request along with other pertinent information to a California post-office box by September 28, 1991. Plaintiffs in the instant case did not request exclusion.

The Roll-up litigation was settled in 1994. The notice of the proposed settlement, which was dated August 15, 1994, was addressed to: "ALL PERSONS WHOSE INTEREST IN EQUITEC REAL ESTATE LIMITED PARTNERSHIPS WERE EXCHANGED FOR SECURITIES ISSUED BY HALLWOOD REALTY PARTNERS, L.P. ALL PERSONS WHO, ON APRIL 11, 1994, OWNED A BENEFICIAL INTEREST IN HALLWOOD REALTY PARTNERS, L.P. ('HRP UNITHOLDERS')." The notice of proposed settlement also provided the following definition of "settled claims":

> " 'Settled Claims' means any and all claims, causes of action, suits, demands or requests for relief, known or unknown, that are or were asserted or could have been asserted in the Actions and each and every complaint filed in the Actions, Plaintiffs' Statement of

Issues To Be Tried and all amendments thereto, or claims which are otherwise referred to or described in any of the letters, pleadings, briefs, expert reports, trial testimony or deposition testimony ***, and all such claims which could have been asserted by the Settling Plaintiffs in any other action or proceeding against the Settling Defendants which arises or relates to the subject matter of these Actions or any matters, transactions, occurrences or omissions referred to in the pleadings, motions, discovery, trial or other papers and proceedings in any of these Actions, including but not limited to, claims relating to fees paid to Hallwood Group or its affiliates by HRP, claims for violations of the federal securities laws, state securities laws, *** and actions arising under state statutory or common law *** up through the entry of the District Court's Notice Order."

The notice of proposed settlement also provided that any class member could be heard at the settlement hearing and could object to or express his or her views regarding the proposed settlement. Plaintiffs did not object to the proposed settlement. The subsequent release that plaintiffs signed included the definition of "Settled Claims" found in the notice of proposed settlement.

In 1994, plaintiffs also sought to amend their complaint in the pending Illinois class action litigation to add Hallwood, alleging that the defendants were responsible as successors-in-interest for the prior conduct of Equitec and Equitec Fund A. The motion to amend was allowed. In answering plaintiffs' amended complaint, the Hallwood defendants asserted both that plaintiffs had already released their claims against the Hallwood defendants in connection with the recent settlement of the Roll-up litigation and that plaintiffs' claims were barred by the doctrine of *laches*.

In September 1995, plaintiffs' motions to consolidate and be certified as a class in the Illinois litigation were granted. Also in 1995, plaintiffs moved for summary judgment in the Illinois litigation against Hallwood A and HRP. The motion against Hallwood A and HRP was denied because there were remaining factual issues as to liability and defendants' assertion of *laches* as an affirmative defense.

In May 1999, the Hallwood defendants filed a motion for summary judgment for the Illinois class action suit, asserting that plaintiffs released their claims in the instant case in the settlement of the Equitec Roll-up action and plaintiffs' claims were barred by the doctrine of *laches*. In October 1999, plaintiffs filed a motion in opposition to defendants' motion for summary judgment. The trial judge heard oral argument on the issues raised in the defendants' motion for summary judgment on January 26, 2000. In an order dated February 1,

2000, the trial court granted defendants' motion for summary judgment. The order provided:

> "[I]t must be pointed out that the order entered by the Federal Court in the Roll-up Litigation approving the settlement and releases, specifically found that the members of the class had been afforded due process.
>
> * * *
>
> *** [T]he release that class plaintiffs signed in the Equitec Roll-up Litigation clearly encompasses the claims and causes of actions in the case at bar. I have heard no arguments that convince me that the Release should not be enforced. *** They agreed to release Equitec and Hallwood from all claims referred to in the pleadings (here, the sale of Real Estate Trusts) and more specifically, agreed to release all claims for violations of state security laws, for money damages, rescission, or actions arising under state statutory or common law. For this promise, class plaintiffs received one million dollars. A bargain is a bargain. *** They never objected when they had an opportunity to do so. They cannot maintain this action against the Hallwood defendants.
>
> Because of this ruling, I am not required to address the Laches [*sic*] question."

The trial judge also held that defendants' contention that the class plaintiffs' agreed to release every claim that arises from the Roll-up litigation was incorrect.

On January 5, 2000, plaintiffs sought leave to assert an additional count against HRP. Plaintiffs' motion alleged that Hallwood A and HRP knew or should have known that Hallwood A would likely incur debts beyond its ability to pay as they came due. Moreover, the motion alleged that the transfer of partnership assets to Hallwood Realty Partners was done to hinder, delay, or defraud the class. The trial court denied plaintiffs' motion to amend on February 7, 2000.

The plaintiffs are appealing the orders entered on February 1, 2000, and February 7, 2000, which, respectively: (1) granted summary judgment in favor of defendants-appellees Hallwood Income Real Estate Investors A and Hallwood Realty Partners, Inc., based upon a release given in an unrelated class action in California; and (2) denied plaintiffs-appellants leave to file a fraudulent-transfer amendment to the class action complaint. We affirm.

## ANALYSIS

●1 The standard of review on appeal from a grant of summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Summary judgment is appropriate where the pleadings, depositions, and admissions

on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240-44, 489 N.E.2d 867 (1986).

The plaintiffs contend that the trial court erred in granting summary judgment in favor of the defendants based upon the judgment and release in the Roll-up litigation because the Roll-up representative could only settle Roll-up claims. The defendants respond that the claims in the instant case are barred because they were included in the settlement agreement and release in the Roll-up litigation. The trial court found that plaintiffs' claims in the Illinois litigation were barred because the claims were released in the Roll-up litigation, and it granted summary judgment in favor of the defendants. Based upon our analysis, which follows, we affirm the trial court's decision granting summary judgment in favor of the defendants.

●2 A release is a contract whereby a party abandons a claim to the person against whom the claim exists. *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 622, 609 N.E.2d 862 (1993). Accordingly, the interpretation of a release is governed by contract law. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991). Thus, the rights of the parties are limited to the terms expressed in the agreement and a release will not be construed to release claims not within the contemplation of the parties. *International Insurance Co.*, 242 Ill. App. 3d at 622-23. The intention of the parties controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838, 648 N.E.2d 317, 321 (1995). Where the terms of the release are clear and explicit, the court must enforce the release as written. *International Insurance Co.*, 242 Ill. App. 3d at 623.

First, we note that the plaintiffs here did not opt out of the Roll-up settlement agreement, although they could have, and the record does not indicate that the plaintiffs ever raised an objection to the breadth and generality of the release. It is clear from the language of the release that the intention of the parties was to discharge the settling defendants of claims "including but not limited to *** claims for violations of the federal securities laws, state securities laws, *** [and] rescission."

●3 In plaintiffs' motion in opposition to the defendants' motion for summary judgment, plaintiffs assert that the 1991 class action notice did not mention the 1988 lawsuit and, therefore, the plaintiffs did not have reason to believe that they had to opt out of the Roll-up litigation to preserve their right to maintain their state securities laws claims.

In class actions, due process requires that members of the plaintiff class have an opportunity to be heard and to participate in the litigation, an opportunity to opt out of the litigation, and adequate representation of absent class members' interests. *Security Pacific Financial Services v. Jefferson*, 259 Ill. App. 3d 914, 921, 632 N.E.2d 299 (1994).

Plaintiffs assert that "the requirement of adequate representation prevents class representatives from releasing claims they do not have." Plaintiffs rely on *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981). In *National Super Spuds*, the issue was whether the trial court erred in approving a proposed settlement that barred all members of the class who had not opted out from bringing any claim based on liquidated contracts, and barred members of the class from bringing any other claims they might be able to assert against defendants, including claims based on unliquidated contracts. The Second Circuit reversed the district court's approval of the settlement, reasoning that the final settlement agreement expanded the scope of the claims to be released without giving proper notice to the class members. In *National Super Spuds*, the notice sent to class members referred only to claims based on liquidated contracts and gave no indication that the action would concern any other claims. *National Super Spuds*, 660 F.2d at 17.

*National Super Spuds* is inapposite. In *National Super Spuds*, the court held, "[H]aving received authority to represent class members solely with respect to liquidated contracts, plaintiffs had no power to release claims based on other contracts." *National Super Spuds*, 660 F.2d at 18. The instant case does not involve a difference between claims based on liquidated contracts and claims based on other contracts. In the instant case, the same (Equitec A) securities are involved in the Roll-up litigation and the Illinois class action litigation. Additionally and importantly, plaintiffs in *National Super Spuds* actually objected in the settling case to the scope of the releases and never signed them. *National Super Spuds*, 660 F.2d at 14. In contrast, plaintiffs in the instant case personally chose to execute the releases in exchange for a portion of the settlement funds. Also, in the instant case plaintiffs do not challenge the propriety of certifying the class in the *Equitable Roll-Up Litigation*. Moreover, unlike *National Super Spuds*, the notice of proposed settlement in the instant case specifically set forth the exact and broad scope of the releases to be provided.

Plaintiffs also argue that there is no connection between the events that gave rise to the Roll-up litigation and the events that gave rise to this lawsuit. However, both class action lawsuits involve the same (Equitec A) securities. Both class action suits refer to the purchase of those Equitec A securities during the 1980s. The settlement agree-

ment in the Roll-up litigation expressly released claims relating to state securities, rescission, and matters referred to in the pleadings. The fourth amended complaint specifically provides a description of Equitec's involvement in real estate investment programs in which investors were furnished with a prospectus and signed a limited partnership agreement prepared by Equitec. Based upon the statement provided in the release and the events listed in the pleadings, the Roll-up release clearly precludes the Illinois class action litigation at issue here.

Plaintiffs also contend that the right to opt out, guaranteed by due process, prevented the Roll-up settlement from encompassing their claims. Plaintiffs further assert that due process requires notice that describes the action and the plaintiffs' rights in the litigation, and provides plaintiffs, once they are informed of their rights, an opportunity to opt out of the litigation. In opposition, the defendants rely on *Matsushita Electric Industrial Co. v. Epstein*, 516 U.S. 367, 134 L. Ed. 2d 6, 116 S. Ct. 873 (1996), and contend that *Matsushita* supports their contention that plaintiffs in the Roll-up litigation could, consistent with due process, release their Illinois securities law claims. In our view, *Matsushita* supports the defendants' contention.

In *Matsushita*, a class action was filed in the Delaware Court of Chancery against MCA, Inc., and its directors for breach of fiduciary duty and waste of corporate assets and Matsushita was added as a defendant for allegedly conspiring with MCA's directors to violate Delaware law. *Matsushita*, 516 U.S. at 370, 134 L. Ed. 2d at 15, 116 S. Ct. at 876. The Delaware suit was based on state law claims, and while it was pending, a federal suit was filed in California, again naming Matsushita as a defendant. The district court declined to certify the class, entered summary judgment for Matsushita, and dismissed the case. The federal plaintiffs appealed to the Ninth Circuit Court of Appeals. After the federal plaintiffs filed their notice of appeal, but before the Ninth Circuit issued its decision, the Delaware suit negotiated a settlement. A notice of the proposed settlement was sent to class members and published in a national newspaper. That notice informed the class members of their right to request exclusion from the settlement class and to appear and present argument at a settlement hearing. *Matsushita*, 516 U.S. at 371, 134 L. Ed. 2d at 15, 116 S. Ct. at 876. Respondents, who were members of both the state and federal plaintiff classes, did not opt out of the settlement class and did not appear at the hearing to contest the settlement or representation of the class. *Matsushita*, 516 U.S. at 372, 134 L. Ed. 2d at 16, 116 S. Ct. at 877.

Matsushita invoked the Delaware judgment as a bar to the Ninth Circuit appeal. *Matsushita*, 516 U.S. at 372, 134 L. Ed. 2d at 16, 116 S.

Ct. at 877. The Ninth Circuit rejected that argument. *Matsushita*, 516 U.S. at 372, 134 L. Ed. 2d at 16, 116 S. Ct. at 877. The United States Supreme Court reversed, reasoning that the federal claims were "clearly within the scope of the release in the judgment, since the judgment specifically refers to lawsuit." *Matsushita*, 516 U.S. at 378, 134 L. Ed. 2d at 20, 116 S. Ct. at 880. In *Matsushita*, the United States Supreme Court reasoned that if the class action plaintiffs wished to preserve their right to litigate exclusively federal claims in federal court, they should have either opted out of the settlement class or objected to the release of any exclusively federal claims. *Matsushita*, 516 U.S. at 385, 134 L. Ed. 2d at 24, 116 S. Ct. at 883. Further, the Court reasoned that as shareholders of MCA's common stock, the respondents were part of the state plaintiff class and since they did not opt out, they were therefore bound by the judgment. *Matsushita*, 516 U.S. at 379, 134 L. Ed. 2d at 21, 116 S. Ct. at 880. Significantly, the Court held that even if the claim could not have been raised in the court that rendered the settlement judgment, the settlement judgment barred subsequent pursuit of that claim in federal court because the claims were within the scope of the release. *Matsushita*, 516 U.S. at 377-78, 134 L. Ed. 2d at 19, 116 S. Ct. at 879-80.

Similarly, in the instant case, plaintiffs could have either opted out of the settlement class or objected to the release of the state securities laws claims if they wished to preserve absolutely their right to litigate exclusively Illinois securities claims.

*Thompson v. Edward D. Jones & Co.*, 992 F.2d 187 (8th Cir. 1993), is also instructive. In *Thompson*, the issue before the Eighth Circuit was whether the appellant's claims in a South Dakota action regarding certain investments were barred by the final judgment and dismissal in a class action filed in the federal court of Arkansas. *Thompson*, 992 F.2d at 188. The Eighth Circuit answered in the affirmative. *Thompson*, 992 F.2d at 188. In *Thompson*, the appellant asserted that the scope of the Arkansas settlement did not cover her South Dakota claims because her suitability claims were inherently individual in nature and could not have been brought in the class action without destroying the commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23(a); *Thompson*, 992 F.2d at 190. The *Thompson* court reasoned that it could not ignore the "broad language" of the notice and the final judgment of dismissal which barred commencing any action related to the limited partnerships investments, including those which an individual class member may have had but knowingly chose to relinquish by remaining a member of the class. *Thompson*, 992 F.2d at 190. The court also held that the appellant in *Thompson* had suf-

ficient notice of the terms of the proposed settlement and adequate opportunity to opt out of the class. *Thompson*, 992 F.2d at 191.

●4 Another instructive case is *In re VMS Securities Litigation*, 145 F.R.D. 458 (N.D. Ill. 1992). In *VMS*, a securities broker moved for enforcement of a securities fraud settlement agreement against three class members, to partially vacate an arbitration award in favor of two class members, and to enjoin further prosecution of released claims in arbitration proceedings. *VMS*, 145 F.R.D. at 459. The final settlement judgment included a release of all asserted or potential class or individual claims related to the purchase of VMS securities and expressly enjoined all parties from asserting any released claim. Similar to the instant case, a clause in the release in *VMS* included a release of all federal claims, class claims, and claims under state or common law that had been or might have been asserted in the litigation or any other court or forum in connection with any facts or occurrences involving the funds. *VMS*, 145 F.R.D. at 463. The court in *VMS* held that plaintiff expressly released any claim or potential claim relating to any facts or transactions associated with the subject funds' securities. *VMS*, 145 F.R.D. at 462. The court also held that the other appellants' arbitration claims arising from their investment in one of the funds in the VMS class action were "plainly encompassed by the settlement release clause embodied in the final judgment" and, therefore, could not be litigated further. *VMS*, 145 F.R.D. at 463. Similar to *VMS*, we hold that the claims in the Illinois litigation involving the state securities laws were plainly encompassed by the settlement release clause embodied in the final judgment entered in the Roll-up litigation and are, therefore, barred.

Plaintiffs' next contention is that "the order denying plaintiffs leave to amend their complaint to add a fraudulent conveyance claim against HRP should be vacated because it was based on the Court's erroneous summary judgment order." Defendants respond that the trial court's order denying plaintiffs' leave to file a fraudulent-transfer claim is not properly before this court because that ruling did not constitute a final order.

Plaintiffs filed a notice of motion for leave to file an additional count on December 30, 1999. The trial court granted defendants' motion for summary judgment on February 1, 2000. On February 7, 2000, the trial court entered an order providing: "(1) that there is no just reason to delay the appeal or enforcement of the order of February 1, 2000; [and] (2) that plaintiffs' motion to add a fraudulent transfer amendment to class action complaint is denied." Because we affirm the trial court's grant of defendants' motion for summary judgment, we do not reach the contentions of the parties on this issue.

Finally, the defendants contend that the doctrine of *laches* bars the instant suit. Specifically, defendants assert that the plaintiffs' unreasonable delay in holding defendants secondarily liable for Equitec's wrongful conduct has prejudiced them. Again, because we affirm the trial court's ruling relative to the summary judgment, we do not reach the *laches* issue.

For the foregoing reasons, the trial court's grant of defendants' motion for summary judgment is affirmed.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.