# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3569

GERALDINE TROPP, as Administrator of the
Estate of MARY E. MIKOS, individually and
on behalf of all other persons and entities
similarly situated,

*Plaintiff-Appellant*,

*v.*

WESTERN-SOUTHERN LIFE INSURANCE CO.,
d/b/a WESTERN-SOUTHERN FINANCIAL GROUP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8341—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED MAY 21, 2004—DECIDED AUGUST 20, 2004

Before BAUER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* On September 27, 2002, Geraldine Tropp, administrator of her mother's estate, filed a class-action complaint against Western-Southern Life Insurance Co. in the Circuit Court of Cook County, Illinois. After Western-Southern removed the case to federal court, Tropp

filed an amended class-action complaint. The amended complaint included her original claim that Western-Southern violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* The district court, finding that the interests of the estate were governed by a prior class-action settlement approved by an Ohio state court, granted summary judgment to Western-Southern on that count. Tropp also alleged (as claims in the alternative) that Western-Southern improperly administered the class-action settlement. The district court, after ensuring that the estate was paid an undisputed amount under the settlement, dismissed the remaining counts. We affirm in all respects.

## I. History

Tropp is a resident of Frankfort, Illinois, and is the administrator of the estate of her mother, Mary Mikos, formerly a resident of Blue Island, Illinois. Mikos held a life insurance policy issued by Western-Southern, a national insurance company incorporated and with its principal place of business in Ohio. Western-Southern specializes in selling relatively low-limit life insurance policies, with moderate premiums, to older individuals.

Mikos purchased the policy on May 1, 1983. She was seventy-four years old at the time. Complying with the terms of the policy, Mikos made monthly payments for the first three years. Thereafter, she had the choice of paying monthly, quarterly, semiannually, or annually; the premium rates were higher if she chose to continue paying through an installment plan rather than a single yearly payment. Mikos chose to pay the premium annually after the three-year period. But she was inappropriately charged (and in fact paid) the higher monthly premium rate, multiplied by twelve, rather than the lower annual premium rate. As a result, by the time Mikos had fully paid the policy

on October 1, 1995, she had paid $5,544.99 in total premiums, whereas had she paid the proper amounts, she would have paid only $4,962.28.

On January 16, 2002, Mikos died. Tropp contacted Western-Southern by telephone the week of January 21 regarding her mother's death. Tropp and her brother met with two of Western-Southern's agents later that week. Tropp asserts that she provided the agents with a copy of Mikos's death certificate at that time. The agents explained that the death benefit on the policy was $1,756 (including accumulated dividends of $129), and on January 28, Western-Southern issued a check in that amount to its local office. Neither the agents nor anyone else at Western-Southern informed Tropp that Mikos had the right to enhanced benefits under a class-action settlement, approved by an Ohio state court the previous October. Tropp, despite her ignorance of the settlement, was suspicious of the amount her mother had paid in premiums, so she refused to cash the check in order to preserve her legal rights.[1]

The Ohio class-action lawsuit, *Kriedler v. Western-Southern Life Assurance Co.*, was a nationwide class action brought by policyholders. The *Kriedler* plaintiffs sought damages in connection with Western-Southern's marketing practices and administration of class members' insurance policies. The second amended complaint in *Kriedler* alleges expansively that "[t]he case is brought . . . on behalf of all persons or entities who have or had an interest in individual

---

[1] Tropp insists that she submitted a death certificate to Western-Southern and that she refused to cash a check from Western-Southern. Western-Southern's business records, on the other hand, indicate that on January 28, 2002, it notified Tropp that the check was being sent to the local office and would be released when she provided the required documents. It claims that no check was issued to Tropp because the death certificate was never received. Ultimately, this dispute is irrelevant to the disposition of the case.

permanent life insurance policies . . . issued by [Western-Southern] . . . and taken from January 1, 1981 through and including December 31, 1998." The *Kriedler* complaint goes on to allege a broad range of deceptive practices by Western-Southern in connection with these policies. The same day the second amended complaint was filed, June 14, 2001, the parties entered into a settlement agreement.

On approximately August 20, 2001, Rust Consulting, a firm hired by Western-Southern to notify potential class members of the litigation and settlement, mailed a Class Notice package to Mikos at her address of record in Blue Island. The package contained a detailed description of the litigation, the settlement, a definition of the class, instructions on how to opt out of the settlement, and a complete copy of the release and waiver of rights that would be effective against settlement participants. The release is very broad, stating that the releasing parties shall not bring any cause of action against Western-Southern for any of the "Released Transactions." The "Released Transactions" are defined as the "marketing, solicitation, application, underwriting, acceptance, sale, purchase, face amount charge, operation, retention, administration, interest crediting, servicing, or replacement . . . of the Policies, or any insurance policy . . . sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies . . . ." Mikos did not opt out of the class.

On October 23, 2001, the Ohio trial court approved the settlement and expressly retained "exclusive jurisdiction over the administration, consummation, enforcement, and interpretation of the Settlement." (R. 8, Ex. A at 25-26.) The court certified a class of "all persons who are or were owners of a Policy or Policies, except . . . any owner of a Policy or Policies who timely excludes himself or herself from the Class . . . ." By virtue of the settlement agreement, class members were eligible for either "General Relief" or "Claim Evaluation Process (CEP) Relief."

Under the General Relief option, class members would "receive coverage under a Settlement Death Benefit simply by remaining in the Class and not electing to participate in CEP." The Settlement Death Benefit increases the beneficiary's policy payment by six percent, following Western-Southern's receipt of proof that the insured died within a year of the date that the settlement agreement was entered.

Under the alternative CEP relief, any class member who believed he or she was harmed by wrongdoing in connection with a policy was invited, in the notices sent by Rust Consulting, to complete and submit a CEP election form by September 23, 2001. Following the approval of the settlement by the Ohio court, class members who elected the CEP remedy could submit claim forms to be reviewed by a third party. Mikos did not elect to participate in the CEP.

Tropp's suit claimed that Western-Southern violated the Illinois Consumer Fraud Act by overcharging her mother for her policy premiums. In her original complaint, filed in Illinois state court, she requested both monetary and injunctive relief for the alleged Illinois Consumer Fraud Act violations. Once the case had been removed to federal court, Tropp also asserted in her amended complaint that if the class action foreclosed her Illinois Consumer Fraud Act claim, then Western-Southern's failure to pay the Mikos estate (and other similarly situated parties) according to the Ohio settlement entitled the Mikos estate to payment under breach of contract, breach of fiduciary duty, unjust enrichment, and an accounting. Western-Southern moved for summary judgment, insisting that Mikos was covered by the *Kriedler* settlement and could only recover pursuant to that agreement, not in a separate lawsuit. Western-Southern acknowledged its obligations under the *Kriedler* settlement and asserted that it stood ready to pay as soon as it received a death certificate from Tropp.

The district court granted summary judgment to Western-Southern on Tropp's Illinois Consumer Fraud Act claim, holding that Mikos indeed was a party to the *Kriedler* set-

tlement. The district judge also denied Tropp's class certification motion, holding that the Ohio trial court had retained jurisdiction over all issues pertaining to the administration of the settlement and that the additional counts should be dismissed for that reason. In addition, the district court ordered Western-Southern to obtain Mikos's death certificate and to tender any undisputed payments owed under the policy. Western-Southern promptly complied with this order, obtaining the death certificate and paying the Settlement Death Benefit to the Mikos estate.

## II. Analysis

A litigant may invoke diversity jurisdiction in federal court when all parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Western-Southern, the removing party, must offer evidence that proves to a reasonable probability that jurisdiction, including the requisite amount in controversy, exists. *See Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). Tropp is (and Mikos was) a citizen of Illinois. Western-Southern is organized and has its principal place of business in Ohio. And because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs[,]" *Payton v. County of Kane*, 308 F.3d 673, 681 (7th Cir. 2002), there is complete diversity among the parties.

There is also a reasonable probability that the amount in controversy at the time of removal exceeded $75,000. Tropp's original complaint, filed at the time of removal (not the subsequent amended complaint), is considered for jurisdictional purposes. *Gossmeyer v. McDonald*, 128 F.3d 481, 487-88 (7th Cir. 1997). In that complaint, Tropp's individual compensatory damages, potential punitive damages, and pre-filing attorneys' fees could not reasonably amount

to $75,000. But because the cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a jurisdictional inquiry, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997), we are satisfied that Western-Southern's affidavits establish that the costs of implementing the injunctive relief requested by Tropp in the original complaint would exceed $75,000.[2]

As a federal court sitting in diversity, we apply state substantive law and federal procedural law. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004).

## A.  The Effect of the *Kriedler* Settlement on Tropp's Claims

We review de novo the district court's grant of summary judgment, construing all facts and inferences in the light most favorable to the non-moving party. *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

As the district court noted, both parties "recognize that the resolution of [Western-Southern's] summary judgment motion hinges on whether or not Mikos was a class member in the *Kriedler* class action lawsuit." This is because a release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims. *Cf. Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) ("The fact that each individual class member did not know the full extent of the burden she

---

[2]  Tropp subsequently chose not to pursue injunctive relief in her amended complaint, filed after removal.

would suffer is unimportant."), (citing *Williams v. Gen. Elec. Capital Auto Lease*, 159 F.3d 266, 274 (7th Cir. 1998) ("It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other.")).

Here, Tropp's claim that Western-Southern collected excessive premiums from Mikos on her 1983 insurance policy, in violation of the Illinois Consumer Fraud Act, is barred by the terms of release in the *Kriedler* class-action settlement. "Where the terms of the release are clear and explicit, the court must enforce the release as written." *Loberg v. Hallwood Realty Partners, L.P.*, 753 N.E.2d 1020, 1025 (Ill. App. 2001). The settlement agreement, which covered purchasers of policies from 1981 to 1998 (with non-applicable exceptions), included Mikos as a member of the class. There is no dispute that Mikos was properly notified by Rust Consulting, the firm hired to provide notification materials to all class members. Mikos could have opted out of the class after she received notice of the settlement, but did not do so.

In addition, Tropp's claim is covered by the definition of "Released Transactions" in the settlement. The settlement agreement barred claims related to "policy charges" or "premium charges," including the "adequacy of the description of those items." (R. 8, Ex. A at 15-18.) Tropp's claim that Western-Southern charged Mikos and others too much in annual premiums is therefore foreclosed by the settlement.

## B.  The Dismissal of the Additional Counts

Tropp's four additional counts were premised on the argument that Western-Southern had violated the *Kriedler* settlement by failing to immediately pay the settlement benefit to the Mikos estate upon her death (and, of course, that further discovery is needed to determine if this same thing has happened to other class members). Western-Southern counters that it simply has been waiting to receive the death certificate to complete the processing of the

claim before payment.

After ensuring that Western-Southern obtained a copy of the death certificate and that Tropp was paid the life insurance benefit (with the additional settlement amount),[3] the district court properly dismissed the four remaining counts because the Ohio trial court had retained exclusive jurisdiction over the administration of the settlement, and Tropp's claims alleged nothing more than violations of the settlement agreement. By retaining exclusive jurisdiction, the Ohio court asserted that it was in the best position to effectively monitor the administration of the settlement so that the interests of all class members are protected. *See generally In re VMS Sec. Litig.*, 103 F.3d 1317, 1321 (7th Cir. 1996); *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1022-23 (7th Cir. 1991). If Tropp wishes to contest the propriety of the *Kriedler* settlement and its administration, the proper place to litigate such a claim is the *Kriedler* trial court.[4]

---

[3] Tropp's counsel refused to submit the death certificate to Western-Southern, claiming that Tropp had already submitted a death certificate. Eventually, Western-Southern retrieved a copy of the certificate itself and paid the claim. We commend the district court for ensuring that the Mikos estate received the undisputed funds, despite the misguided efforts of Tropp's counsel to avoid collecting the settlement funds for his client. Western-Southern did not dispute that it owed the Mikos estate this money; there was no legal issue to decide.

[4] Before the claims were ultimately dismissed on August 29, 2003, the district court had considered, on August 1, a motion by Tropp to certify a class based on her allegations that Western-Southern improperly failed to pay the settlement amount promptly. Because we agree that dismissal of the substantive complaint is proper, there is no need to consider whether class certification was appropriate. As the district judge noted at the August 1 hearing, "[t]hat would be a class issue potentially with respect to the Ohio

(continued...)

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Tropp's lawsuit.


A true Copy:

      Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*


---

[4]  (...continued)
litigation. I don't think it would be for this Court to determine what relief is appropriate to class members there. I think that's a matter to go back before the Ohio judge and say there has been a breach of the settlement."

---