**In re Robert and Jolene JOHNSON, Debtors.**

**Bankruptcy No. 04–83665.
Adversary No. 05–8034.
Dist.Ct.No. 06–4079.**

United States District Court,
C.D. Illinois.

June 28, 2007.

Joel A. Deutsch, Rock Island, IL, for Debtors.

Maya Parekh, Galesburg, IL, for trustee.

## ORDER

MIHM, District Judge.

This matter is now before the Court on Appellant, Richard E. Barber as Chapter 7 Trustee's ("Trustee") Appeal from the Order of the Bankruptcy Court finding the debtors' deed in lieu of foreclosure was not in full of the obligation secured by the bank's note and mortgage, without deficiency. For the reasons state herein, the decision of the Bankruptcy Court is AFFIRMED.

### PROCEDURAL BACKGROUND

On August 13, 2004, Debtors Robert and Jolene Johnson ("the Johnsons") commenced this bankruptcy case by filing a petition under Chapter 7 of the Bankruptcy Code. Appellant Richard E. Barber was appointed the trustee. Several months before the Johnsons had filed for bankruptcy protection, they gave the Appellant, First Midwest Bank ("the Bank") a deed in lieu of foreclosure on a construction loan. After the parties executed the deed in lieu of foreclosure, but before the bankruptcy, Robert Johnson attempted to close an account at the Bank and received a teller's check for the account balance. Soon after, the Bank stopped payment on the check, asserting a right of setoff to the mortgage debt it claimed was still outstanding. The Trustee filed an adversary proceeding to recover the proceeds from the teller's check. Following a bench trial on the merits, the Bankruptcy Court for the Central District of Illinois, entered judgment in favor of the Bank and against the Trustee. This appeal follows.

### FACTUAL BACKGROUND

On March 15, 2003, the Johnsons obtained a $313,000 construction loan from the Bank for a real estate renovation pro-

ject. The Johnsons executed a promissory note in favor of the Bank, secured by a construction mortgage on the property. The note provided for the establishment of an "interest reserve account" at the Bank. Under the note's terms, "[d]uring construction of the Project prior to the Scheduled Completion Date, amounts in the Interest Reserve will be advanced by Lender to pay regularly scheduled interest on the Loan...." Pursuant to the note, on March 25, 2004, an account was established in the names of Robert and Jolene Johnson, with a transfer of $22,690. These funds were advanced by the Bank. The signature card for the account identified it as a "business escrow account," and the Bank made automatic deductions from the account in order pay monthly interest on the construction loan until January 15, 2004. No other withdrawals were made from the interest reserve account.

The promissory note also contained the following provision: "RIGHT OF SET-OFF. To the extent permitted by applicable law, Lender reserve a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account)."

By the end of 2003, the Johnsons had become unable to keep up their end of the construction deal, and the Bank was unwilling to advance additional funds. After negotiations, the Johnsons agreed to a deed in lieu of foreclosure. In return for a release from the Bank, the Johnsons were to convey the mortgaged real estate to the Bank. The debtors' attorney, William Laird, drafted the Agreement for Deed in Lieu of foreclosure. The Bank's attorney prepared the quit claim deed. There was no explicit mention of the interest reserve account during negotiations or in the deed in lieu documents. The Johnsons executed the quit claim deed in the Bank's favor on February 27, 2004. With respect to the Johnsons' remaining obligations, the accompanying Agreement for deed in lieu of foreclosure provided:

The Bank shall accept said Quit Claim Deed in lieu of foreclosure and all right [sic], obligations, remedies or other causes of actions under the Promissory Note, Construction Mortgage and Assignment of Rents are deemed executed. Borrowers shall have no further obligation to the Bank and the Bank shall have no further recourse towards borrowers with regard thereto.

About two months later, Robert Johnson mentioned the interest reserve account to his attorney, Mr. Laird. On May 13, 2004, Robert, acting on the advice of counsel, appeared at the Bank and requested that the interest reserve account be closed. A teller issued him a check for the remaining account balance—$10,053.90. Soon after, the Bank stopped payment on the check. On June 18, 2004, the Johnsons' attorney wrote the Bank demanding payment of the funds. On July 20, 2004, the Bank responded by letter, asserting its right of setoff.

The Johnsons filed a joint Chapter 7 petition on August 13, 2004. On their form disclosing personal property, the Johnsons included their unresolved claim against the Bank for stopping payment on the teller's check. The Trustee filed a two-count complaint against the Bank, alleging that the Bank had wrongfully dishonored the check and that he was entitled to turnover of the funds.

The Trustee filed a Motion for Summary Judgment in the adversary proceeding, arguing that the deed in lieu of foreclosure extinguished the Johnsons' obligation to the Bank, and the Bank was not entitled to stop payment on the check. The Bankruptcy Court denied the Motion, determining that the Johnsons' right to the account balance presented a disputed issue of ma-

terial fact. After a trial on the merits, the Bankruptcy Court ruled that (1) the monies in the interest reserve account belonged to the Johnsons; (2) the Bank's acceptance of the deed in lieu of foreclosure prevented it from enforcing a deficiency judgment against the Johnsons; (3) the Bank had both a common law and contractual right of setoff against the Johnsons; and (4) the written agreement for deed in lieu of foreclosure did not provide for release of the Bank's common law right of setoff. Therefore, the Bankruptcy Court concluded, the Bank was within its rights when it stopped payment on the check that it erroneously issued to the Johnsons. This appeal follows.

## JURISDICTION AND STANDARD OF REVIEW

■ This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed *de novo. In re Smith,* 286 F.3d 461, 465 (7th Cir.2002); *In re Yonikus,* 996 F.2d 866, 868 (7th Cir.1993); *In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986); *see also,* Bankruptcy Rule 8013.

## DISCUSSION

The Trustee argues that the Bankruptcy Court erred by finding that the deed in lieu of foreclosure was not in full of the obligation secured by the bank's note and mortgage, without deficiency. Specifically, he challenges the Bankruptcy Court's holdings that the deed did not fully extinguish the mortgage debt, that the Bank's right of set off survived the deed in lieu transaction, and that as a consequence, the

Bank was within its rights to stop payment on the check. The Trustee argues that there are two operative provisions that demand a different result. The first is the Illinois statute governing deeds in lieu, and the second is the release language in the Agreement for Deed in Lieu of Foreclosure.

## I. The Illinois deed in lieu of foreclosure statute

■ The Trustee argues, as he did below, that section 15–1401 of the revised Illinois Mortgage Foreclosure Act releases the debtors of any obligations under the note. The statute provides, in relevant part,

> Acceptance of a deed in lieu of foreclosure shall relieve from personal liability all persons who may owe payment or the performance of other obligations secured by the mortgage, including guarantor of such indebtedness or obligations, except to the extent a person agrees not to be relieved in an instrument executed contemporaneously.

735 ILCS 5/15–1401. There are very few Illinois cases that confront this statute, but a 1990 Illinois appellate decision is especially instructive. In *Olney Trust Bank v. Pitts,* the Illinois appellate court clarified the meaning of "personal liability" under the section, and its effect on the deed in lieu transaction. 200 Ill.App.3d 917, 146 Ill.Dec. 435, 558 N.E.2d 398 (5th Dist. 1990). There, the defendant argued that "personal liability" should be equated with the existing mortgage debt on the promissory note prior to foreclosure. *Id.* at 403. The court rejected the defendant's argument and instead interpreted the term "personal liability" in section 15–1401 as referring to "the liability for deficiency after sale of the property which the mortgagor owes pursuant to the mortgage note and for which the mortgagor receives a

release in exchange for the deed in lieu of foreclosure." *Id.* The Illinois court drew a helpful analogy to a discharge received by a debtor in bankruptcy:

> [A] basic tenant of bankruptcy law holds that a discharge in bankruptcy releases the debtor from personal liability but does not discharge the mortgage lien. The mortgagee may foreclose the mortgage lien following a mortgagor's discharge in bankruptcy but is forbidden from obtaining or enforcing a deficiency judgment against the mortgagor .... [The discharge] does not annul the original debt but merely suspends the right of action for its recovery. We note that the Illinois Mortgage Foreclosure Act is specifically supplemented by general principles of law, including bankruptcy law, except to the extent displaced by a particular provision in the act.
>
> In summary, a discharge in bankruptcy does not constitute payment or extinguishment of obligations which are discharged but merely serves to bar their enforcement by legal proceedings. We likewise interpret section 15–1401 and hold that acceptance of the deed in lieu of foreclosure does not extinguish the mortgage debt, but does bar the mortgagee from obtaining or enforcing a deficiency judgment.

*Id.*

Under the clear ruling in *Olney*, Section 15–1401's effect on the instant facts was not to eliminate the debt that the Johnsons owed to the bank. Rather, the statute prevents the bank from instituting an action to collect on any deficiency that might exist after the property is sold.

 The Trustee seems to suggest that if the Court were to uphold the Bank's attempt to exercise a right of setoff, the Bank would be collecting on a deficiency in violation of the statute. However, the facts don't support this argument. A deficiency is "the amount by which the sum obtained from resale of the collateral fails to satisfy the debt outstanding at the time of default." *Bank of Chenoa v. Bagby,* 126 Ill.App.3d 676, 81 Ill.Dec. 725, 467 N.E.2d 596, 598 (4th Dist.1984). Here, when the Bank asserted its right of setoff, it was "canceling out," so to speak, a portion of the mortgage debt still owed to it. Because the Bank did not act to obtain or enforce a deficiency judgment, and the underlying mortgage debt was not eliminated by the deed in lieu of foreclosure, the Bank's actions do not violate the statute.

## II. The Agreement for Deed in Lieu of Foreclosure

While the Bank's conduct was not forbidden by section 15–1401, the effect of the release in the Agreement for Deed in Lieu of Foreclosure is a separate consideration. The Bankruptcy Court found that the Bank had both a contractual right to setoff, as provided in the promissory note, and a common law right to setoff. It further held that the release in the Agreement for Deed in Lieu of Foreclosure did not unequivocally release the Bank's common law right of set off. Because of the circumstances surrounding the case, and the general rules regarding interpretation of contractual releases, the Bankruptcy Court concluded that the Bank's common law right of set off remained available to the Bank at the time the teller's check was issued, and the Bank was justified in stopping payment on the check. This Court affirms that reasoning.[1]

---

1. The Bankruptcy Court provided an alternative, broader grounds for its conclusion—that the contractual language of the release was ambiguous to the extent of that release, and under the rule of contracts that contractual ambiguities should be construed against the

It is a "fundamental principle of banking law that the relationship between a bank and its depositor is created and regulated by the express or implied contracts between them." *Symanski v. First National Bank of Danville*, 242 Ill.App.3d 391, 182 Ill.Dec. 455, 609 N.E.2d 989, 991 (4th Dist.1993). Under Illinois common law, a bank has the power to apply its depository's account for a debt he owes to the bank. *Id.* at 993. As mentioned above, the Johnsons' promissory note also provided the Bank with a contractual right of setoff.

The Trustee argues, as he did below, that in the Agreement for Deed in Lieu of foreclosure, the Bank unequivocally waived any claims or rights, including the right of setoff. In analyzing the extent of the contractual release, the Court is mindful that "the interpretation of a release is governed by contract law. Thus, the rights of the parties are limited to the terms expressed in the agreement and a release will not be construed to release claims not within the contemplation of the parties." *Loberg v. Hallwood Realty Partners, L.P.*, 323 Ill.App.3d 936, 257 Ill.Dec. 394, 753 N.E.2d 1020, 1024 (1st Dist.2001). The scope of a release is determined by the parties' intent, and in discerning that intent, this Court is to look to "the release's express language as well as the circumstances surrounding the agreement." *Id.* at 1025. The Court is to enforce a release whose terms "are clear and explicit." *Id.*

The Agreement for Deed in Lieu between the Bank and the Johnsons contained the following provision:

The Bank shall accept said Quit Claim Deed in lieu of foreclosure and all right [sic], obligations, remedies or other causes of actions under the Promissory Note, Construction Mortgage and Assignment of Rents are deemed executed. Borrowers shall have no further obligation to the Bank and the Bank shall have no further recourse towards borrowers with regard thereto.

As the Bankruptcy Court noted, this release of the Bank's rights of recourse against the Johnsons, is not limitless, as written. The Agreement states, "The Bank shall have no further recourse towards borrowers *with regard thereto.*" Under ordinary interpretation, the phrase "with regard thereto" incorporates the limitation of the first sentence, i.e., the Bank's foreclosure rights and the other causes of action *under the Note and Mortgage.*

At the heart of the Trustee's objections to the Bankruptcy Court's holding is Trustee's position that the Bankruptcy Court erred in considering the Bank's common law rights as separate from its rights under the Note and Mortgage. Contrary to the Trustee's position that the Bankruptcy Court's separate analysis of the contractual and common law rights of setoff was an "artificial bifurcation" and "is not good law," Appellant Brief, at 10, the Bankruptcy Court's approach was well founded and will also be employed by this Court. It is well settled that, in circumstances such as these, a bank's contractual and common-law rights of setoff against its depositors are separate rights. 15 WILLISTON ON CONTRACTS § 44:38 (2007) ("A default in payment of a note typically gives rise to both a contractual and a common-law right of the bank to set off the amount of the past due debt against deposits held by the

---

drafter, the agreement was not intended to release the Bank's right of setoff in the interest reserve account funds. Because this Court affirms the Bankruptcy Court's first holding, and because that is the focus of the Trustee's appeal, this Court declines to fully reach the merits of this alternative holding.

bank, although whether a contractual right of set off exists, and the scope of that right, depend on the deposit or loan agreement."). The rights are distinct and often "exerciseable" at different times and under different circumstances, and if a bank is barred from exercising one of its rights of setoff, because of a contractual release or some other reason, it does not automatically follow that the bank may not alternatively exercise one of the other setoff rights. *See, e.g., Selby v. DuQuoin State Bank,* 223 Ill.App.3d 104, 165 Ill.Dec. 621, 584 N.E.2d 1055 (5th Dist.1991) (while circumstances could not support exercise of common law right of setoff, court found that bank's exercise of contractual right of setoff was appropriate); *Magnusson v. Am. Allied Ins. Co.,* 290 Minn. 465, 189 N.W.2d 28 (1971) (provision of contract eliminating contractual right of setoff between parties did not exclude any right of setoff otherwise available, and therefore did not exclude statutory right of setoff).

Under Illinois law, this Court looks to the express language of the release and the circumstances surrounding the agreement in order to determine the extent of the release. *Loberg,* 257 Ill.Dec. 394, 753 N.E.2d at 1025. It is unclear whether the Bank waived its common law rights to setoff, i.e., the right of setoff it possessed by virtue of the fact that the Johnsons were also depositors at the Bank. As aptly explained by the Bankruptcy Court, the release is ambiguous at multiple points:

> [T]he phrase "deemed executed" is a poor choice of words and does not carry the same meaning as *waived* or *released. Executed* means "completed; carried into full effect; already done or performed; signed; taking effect immediately; now in existence or in possession; conveying an immediate right or possession." *Black's Law Dictionary* (5th ed.1979). *Deem* means "to hold; consider; adjudge; believe; condemn; determine; treat as if; construed." Thus, *deemed executed* could reasonably be construed to mean "considered to take effect immediately" or "determined to convey the immediate right or possession." As such, the first sentence could reflect an intent to grant the BANK the immediate right to perform the remedies provided in the loan documents, which include the right to freeze the account and exercise a setoff by crediting the funds to the loan balance. Its meaning is unclear.

> In addition, the phrase "the Bank shall have no further recourse towards borrowers," is also not clear. Rather than constituting a general release of all rights as the TRUSTEE contends, it is reasonably interpreted as a release of personal liability only as the words "towards borrowers" indicate. This interpretation is also consistent with the effect of a deed in lieu of foreclosure under 735 ILCS 5/15–1401."

Bankruptcy Opinion, at 114–15.

In addition, just as the language of the Agreement is not fully dispositive on the extent of the release, the circumstances surrounding the Agreement are not especially helpful to resolving the instant dispute. The testimony at trial, summarized in the Bankruptcy Court's opinion, indicated that neither party discussed the interest reserve account during the deed in lieu of foreclosure negotiations. Robert did appear at the Bank and attempt to withdraw the funds, suggesting he believed he still had a right to them, however, he was acting the advice of counsel, who was not familiar with the account. The Bank teller initially issued Robert the check that he sought, providing some evidence that the Bank may have also believed that the Johnsons were entitled to the funds in the reserve account. However, once Bank

personnel with knowledge of the nature of the account and relevant transactions discovered that the check had been issued, they decided to stop payment of the check, suggesting that "decisionmakers" for the Bank believed that the Bank was entitled to the funds and had not released all of its setoff rights. Moreover, it is undisputed that the funds in the account were advanced by the Bank as part of the construction loan, and those funds were only ever used to pay interest on the loan.

 In the end, the circumstantial evidence does not conclusively weigh in either party's favor with respect to what the parties intended under the release, nor do the written terms of the agreement display a clear intent from the parties. To the extent the Agreement is ambiguous, those ambiguities must be construed against the drafter, the Johnsons. *Hartshorn v. State Farm . Ins. Co.*, 361 Ill.App.3d 731, 297 Ill.Dec. 724, 838 N.E.2d 211, 216–17 (2d Dist.1005). Even if the Agreement between the parties did explicitly provide for release of the Bank's contractual right of setoff, it did not clearly and unambiguously provide for release of the common law right of setoff.[2] As explained above, the Court holds that the contractual and common law setoff rights are truly separate rights, and there is no authority to suggest they could be bootstrapped together such that the release of one right constitutes the release of the other. Because the Agreement did not clearly and unambiguously release the Bank's common law right of setoff, that right survived the deed in lieu transaction, and it was not wrongful for the Bank to stop payment on the teller's check it erroneously issued to the Johnsons.

## CONCLUSION

For the reasons stated herein, the Order of the Bankruptcy Court entering Judgment in favor of the Bank is AFFIRMED. This matter is now TERMINATED.

---

2. As explained in footnote 1, the Bankruptcy Court's order provided an alternate basis for the its holding, which hinged on the agreements general ambiguity regarding the extent of a release of any setoff rights, not just those under common law. Because it has affirmed the Bankruptcy Court's first holding, the Court does not reach the merits of this alternate holding.